1

2          IN THE UNITED STATES DISTRICT COURT

3            FOR THE DISTRICT OF COLUMBIA

4

5                                    )         CASE NO. 1:15-cv-00504-BJR
                                     )
6     KARIN WENG,                    )
                                     )
7               *Plaintiff,*         )         ORDER GRANTING IN PART AND
                                     )         DENYING IN PART DEFENDANT'S
                                     )         MOTION FOR JUDGMENT ON THE
8          v.                        )         PLEADINGS AND DENYING
                                     )         PLAINTIFF'S CROSS-MOTION FOR
9     PATRICK PIZZELLA,              )         PARTIAL JUDGMENT ON THE
      Acting Secretary, U.S. Department )      PLEADINGS
10    Of Labor                       )
                                     )
11              *Defendant.*         )
                                     )

12

13                     **I.      INTRODUCTION**

14         *Pro se* Plaintiff Karen Weng brings the current action alleging discrimination and

15    retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,

16    *et seq*. ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. § 749(a) ("Rehabilitation Act")

17    based on her termination from the Department of Labor ("DOL"). This is the second federal court

18    case stemming from her time at DOL, the previous, *Weng v. Solis*, 10-cv-2051 (D.D.C. closed

19
      Dec. 4, 2013), ended with the parties stipulating to a settlement. *Weng*, 10-cv-2051, Dkt. No. 45.

20
           This action, however, is based solely on claims arising from her termination. Defendant

21

22

23

24

25
                                      1

Patrick Pizzella, Acting Secretary of DOL,[1] moved for judgment on the pleadings or, alternatively, summary judgment. Dkt. No. 41. In response, Plaintiff cross-moved for partial judgment on the pleadings or, alternatively, summary judgment. Dkt. No. 48.[2] Having reviewed the motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part Defendant's motion and deny Plaintiff's cross-motion. The reasoning for the Court's decision follows.

## II.    BACKGROUND

### A. Statutory Framework

#### 1. Procedure of Raising an Employment Dispute

Before a federal employee can bring a lawsuit in federal court under Title VII or the Rehabilitation Act, she must exhaust the administrative remedies available at the agency in which she is employed. *See Koch v. Walter*, 934 F. Supp. 2d 261, 267–68 (D.D.C. 2013) (citing 42 U.S.C. § 2000e–16(c) ("requiring exhaustion under Title VII procedures"); 29 U.S.C. § 794a(a)(1) ("applying the remedies, procedures, and rights associated with Title VII claims to Rehabilitation Act claims")). Exhausting the administrative remedies at the agency involves numerous regulatory procedures and steps including, for example, contacting an Equal Employment Opportunity ("EEO") Counselor before filing a formal complaint with the agency. 29 C.F.R. § 1614.105. This

---

[1] This action has gone through several name changes as the leadership at DOL has changed through the course of time. *See, e.g.*, Dkt. No. 1 (original complaint listing defendant as Thomas E. Perez, Secretary of Labor).

[2] In a separate declaration by DOL Senior Trial Attorney Rolando Valdez attached to Defendant's opposition to Plaintiff's cross-motion, Defendant has requested additional discovery pursuant to Federal Rule of Civil Procedure 56(d) to address "numerous assertions that are unsupported by proper record evidence" made by Plaintiff. Dkt. No. 54-1. As the Court will deny Plaintiff's cross-motion, this request is moot, and the Court will not grant additional discovery.

2

route is referred to as the "statutory procedure," *see, e.g.,* 5 U.S.C. § 7121(d), or "statutory and regulatory path," *see, e.g., Koch*, 934 F. Supp. 2d at 268.

Under the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*, however, a federal employee may opt instead to bring a complaint of employment discrimination through a process negotiated by the agency and the employee's union in a collective bargaining agreement. *See* 5 U.S.C. § 7121(d). As distinguished from the "statutory procedure," this route is referred to as the "negotiated procedure," *see, e.g.,* 5 U.S.C. § 7121(d), or "negotiated grievance procedure," *Koch*, 934 F. Supp. 2d at 268. In the matter currently before the Court, Plaintiff is a member of the American Federation of Government Employees, Local No. 12, AFL-CIO ("Local 12"), under whose 2005 collective bargaining agreement (the "CBA") she brought the grievance currently at issue. Dkt. No. 38 at ¶ 8.

Aggrieved employees may bring their allegations "under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d).[3] The employee makes her selection between paths when she files either with the agency or the union. *Id.* If the employee chooses the negotiated procedure, she may appeal an unfavorable decision to either the Equal Employment Opportunity Commission ("EEOC") or the Merit Systems Protection Board ("MSPB"). *Id.*

In this case addressing Plaintiff's claims around her termination, Plaintiff chose the negotiated grievance route and filed with the MSPB after losing in arbitration. Dkt. No. 38 at ¶ 8.

---

[3] As detailed below, Plaintiff brought employment disputes under both the statutory procedure and the negotiated grievance process, but her statutory procedure complaints were settled in a previous case. *See infra* at 6–7. To distinguish, the Court follows Plaintiff's lead in referring to statutory proceedings as "complaints" and union proceedings as "grievances."

3

2.  *The MSPB and the Substance of Claims*

The MSPB is an independent federal adjudicator of federal employment disputes.  *See* 5 U.S.C. §§ 1204, 7512, 7701.  Its jurisdiction is reserved for particularly severe personnel actions, including removal, suspension for more than 14 days, reduction in grade or pay, and furlough of 30 days or less.  5 U.S.C. § 7512.  For the purpose of MSPB jurisdiction, a "coerced" or "involuntary" resignation is treated as a removal.  *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1329–30 (Fed. Cir. 2006).  Thus, generally speaking, The MSPB does not have jurisdiction of an employee's removal where that employee voluntarily resigned but does have jurisdiction if that "seemingly voluntary action[]" was, in fact, "'involuntary and thus tantamount to forced removal.'"  *Id.* at 1328 (quoting *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340–41 (Fed. Cir. 2001)).

A plaintiff may generally advance two types of claims in front of the MSPB.  First, she may argue that her agency had insufficient reasons for engaging in an employment action under the MSPB's jurisdiction.  *See* 5 U.S.C § 7513(a) ("an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service"); *id.* at § 7513(d) ("[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board").  Second, she may also claim the agency acted for discriminatory purposes, in violation of Title VII or the Rehabilitation Act.  *See* 5 U.S.C. § 7702(a)(1).  When an aggrieved employee complains that an agency acted for both insufficient reasons (*i.e.*, nondiscriminatory reasons) and discriminatory reasons, she is said to bring a "mixed claim."  *See Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (emphasis in original) ("[w]hen an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a

4

'mixed case'"); *see also* 29 C.F.R. § 1614.302 (defining a "mixed case appeal" as "an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, disability, age, or genetic information"); 5 U.S.C. § 7702(a)(1) (emphasis added) ("in the case of any employee or applicant for employment who-- (A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, *and* (B) alleges that a basis for the action was discrimination . . . ."); *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 198 (2017).

If the MSPB upholds the personnel action, "the employee again has a choice: She may request additional administrative process, this time with the EEOC, or else she may seek judicial review." *Kloeckner*, 568 U.S. at 45 (citing 5 U.S.C. §§ 7702(a)(3), (b); 5 C.F.R. § 1201.161; 29 C.F.R. § 1614.303); *see also Perry*, 137 S. Ct. at 1981. The general rule for a judicial appeal from the MSPB is that the proper venue is the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1)(A). The exception to this rule, however, is the "mixed case," which, under 5 U.S.C. § 7703(b)(2), "shall be filed" under the applicable discrimination statutes being alleged, which "all authorize suit in federal district court." *Perry*, 137 S. Ct. at 1981 (quoting *Kloeckner*, 568 U.S. at 46). During the course of reviewing a claim appealed from the MSPB in a mixed case, the federal district court treats "the claims as a single unit, but appl[ies] different standards of review." *White v. Tapella*, 876 F. Supp. 2d 58, 64 (D.D.C. 2012); *see also Grant v. Mnuchin*, 373 F. Supp. 3d 286, 294 (D.D.C. 2019). "On the discrimination claim, the complainant 'shall have the right to have the facts subject to trial *de novo* by the reviewing court'" while the "nondiscrimination claims" are reviewed "on the administrative record" and are granted APA-like deferential review. *Butler v. West*, 164 F.3d 634, 639 n.10 (D.C. Cir. 1999) (quoting 5 U.S.C. §

7703(c)); *see also Hayes v. U.S. Gov't Printing Office*, 684 F.2d 137, 138–39 (D.C. Cir. 1982).

## B. Factual Background

Plaintiff is an Asian female who was born in Taiwan and graduated from Yale College and Georgetown University Law Center. Dkt. No. 38 at ¶ 10.[4]  She began working at DOL as an Employee Benefits Law Specialist in 1995. *Id.* at ¶¶ 10–11.  Plaintiff alleges that from the beginning of her employment she, along with other minority employees, were subjected to "offensive racial, ethnic, and/or sexually charged slurs, comments, and jokes by [DOL] management officials." *Id.* at ¶ 34.  Despite the alleged harassment, during the earliest period of her employment Plaintiff contends that she "was considered qualified for her position, received 'highly effective' or better performance evaluations, and was selected for a promotion to GS-13 in 2000." Dkt. No. 47 at 20; *see also* Dkt. No. 38 at ¶ 38.

Circumstances worsened, however, around 2004 when two of Plaintiff's female co-workers began filing EEO complaints. Dkt. No. 38 at ¶ 19.  Plaintiff herself became involved in 2006 when she served as a witness in her co-workers' cases. *Id.*  Plaintiff claims management's harassment escalated based on her involvement in these actions, and she began filing her own EEO complaints in April 2006. *Id.* at ¶ 39–40, 42.  She also claims that she was diagnosed with post-traumatic stress disorder, depression, and anxiety as a result of her treatment, but was denied reasonable accommodations to cope with her conditions. *Id.* at ¶¶ 43–44, 46–48.

In total, Plaintiff filed seven EEO complaints based on working conditions primarily

---

[4] This Court has laid out the facts of Plaintiff's case several times in both this and her previous case. *See Weng v. Solis*, 842 F. Supp. 2d 147, 149–155 (D.D.C. 2012); *Weng v. Solis*, 960 F. Supp. 2d 239, 243–245 (D.D.C. 2013); Dkt. No. 17 at 3–5.

6

between February 2006 to April 2009. *Weng v. Solis*, 842 F. Supp. 2d 147, 150 (D.D.C. 2012). These seven complaints served as the basis for her first federal case, which, as mentioned earlier, ended with the parties stipulating to a settlement in November of 2013 after the Court granted in part and denied in part Defendant's motion to dismiss, *Weng*, 842 F. Supp. 2d 147, and granted in part and denied in part Defendant's subsequent motion for partial summary judgment, *Weng v. Solis*, 960 F. Supp. 2d 239 (D.D.C. 2013).

According to Plaintiff, while she litigated her previous claims and before settlement the harassment at her workplace continued with management "micromanag[ing] her work, subject[ing] her to heightened scrutiny, and unjustifiably criticiz[ing] her work product." *See* Dkt. No. 38 at ¶¶ 162, 167, 172. She was eventually placed on a Performance Improvement Plan ("PIP"), *id.* at ¶ 94, although she claims there were numerous irregularities and procedural inequities associated with the drafting and implementation of the PIP, *see id.* at ¶¶ 82, 84, 85, 94, 95.

According to Defendant, despite the PIP, Plaintiff's deficient performance did not improve. On January 6, 2012, her supervisor issued a Proposal to Remove for Unacceptable Performance. Dkt. No. 38 at ¶ 123; Dkt. No. 47-1, Ex. Q. This proposal was finalized on March 7, 2012 when management issued a Decision to Remove. Dkt. No. 38 at ¶ 137. The Decision stated that her removal would be effective on March 9, 2012. On March 9, however, prior to her removal taking effect, Plaintiff sent an email to her supervisors stating that, on advice of counsel provided by

Local 12, she was resigning effective that day. *Id.* at ¶ 139; Dkt. No. 41-3.[5]

On March 13, 2012 Plaintiff invoked the negotiated procedure established by Local 12's CBA, filed a grievance regarding her termination, and proceeded to arbitration as provided in the CBA. Dkt. No. 38 at ¶ 8; Dkt. No. 41-4. At arbitration, the arbiter ruled that he did not have jurisdiction over Plaintiff's grievance because Plaintiff had resigned, not been fired, and that her resignation was voluntary. Dkt. No. 38 at ¶ 8; Dkt. No. 41-1 at 14–15. Plaintiff then appealed this decision to the MSPB, and the matter was docketed as No. CB 7121-13-0180-V-1. Dkt. No. 38 at ¶ 8.

On August 28, 2014, the MSPB Administrative Judge issued a recommendation that the MSPB dismiss Plaintiff's appeal for lack of jurisdiction based on her voluntary resignation. Dkt. No. 41 at 8; Dkt. No. 41-2.[6] On March 12, 2015, the MSPB adopted the recommendation in a Final Order. Dkt. No. 38 at ¶ 8; Dkt. No. 41-7.

### C. Procedural History

In response to the MSPB's final decision, Plaintiff filed the current action on March 7, 2015. Dkt. No. 1. In her Second Amended Complaint, she alleges four causes of action: Count I claims Retaliation in violation of Title VII and the Rehabilitation Act and Counts II, III, and IV claim discrimination based on race, national origin, and sex in violation of Title VII. Dkt. No. 38.

---

[5] The entire email reads: "On March 7, 2012, I was issued a notice of final removal by Acting Director and Deciding Official Lyssa Hall. Per the advice of Local 12, I hereby resign my position with EBSA's Office of Exemption Determinations, effective 4 PM today, in lieu of removal. I do not waive any of my appeal rights." Dkt. No. 41-3 at 2.

[6] The Administrative Judge originally issued her opinion as an "Initial Decision." *See* Dkt. No. 41-2 at 1. The next day, the Administrative Judge issued an Erratum stating that the initial Decision was meant to be a Recommendation. *See* Dkt. No. 41-7 at 2 n.2.

at ¶¶ 163, 168, 173.  On April 24, 2019, Defendant moved for judgment on the pleadings or, alternatively, summary judgment arguing: (1) Plaintiff failed to exhaust her administrative remedies; (2) her claims are barred by *res judicata* based on the stipulation in her previous federal court case; and (3) this Court should defer to the MSPB's decision dismissing Plaintiff's case because it concluded that she voluntary resigned instead of letting her termination take effect.  Dkt. No. 41 at 2–3.  Plaintiff responded and included her own cross-motion for partial judgment on the pleadings or, alternatively, summary judgment, which argues that she is entitled to judgment because her dismissal was "so rife with harmful procedural errors and other violations of law" that there are no genuine issues for trial.  Dkt. No. 47 at 2.

### III.    LEGAL STANDARD

Defendant has brought his motion under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction over the Rehabilitation Act claim and Rule 12(c) or, alternatively, Rule 56 for the remainder.  *See* Dkt. No. 41 at 2–3.  Plaintiff has also brought her cross-motion pursuant to Rule 12(c) or, alternatively, Rule 56.  *See* Dkt. No. 47 at 1.  Although the parties have provided "matters outside of the pleadings," the Court will analyze both motions under Rule 12(c).

Rule 12(c) provides that, "[a]fter the pleadings are closed--but early enough not to delay trial, a party may move for judgment on the pleadings."  FED. R. CIV. P. 12(c).  While the standard of review under Rule 12(c), is "'virtually identical' to that applied to a motion to dismiss under Rule 12(b)(6)," *Baumann v. D.C.*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006)), "[t]he distinction between a motion brought under Rule 12(b)(6) and a

motion brought under Rule 12(c) is more than merely semantic,'" *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 48 (D.D.C. 2018) (internal quotations removed).

"[T]o support a Rule 12(c) motion, 'the moving party [must] demonstrate[ ] that no material fact is in dispute and that it is entitled to judgment as a matter of law.'" *Murphy*, 326 F.R.D. at 49 (quoting *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008)); *see also Dist. No. 1, Pac. Coast Dist., Marine Engineers Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760–61 (D.C. Cir. 2019). Thus, in order to prevail, a movant must show "*both* that there is no material dispute of fact (as reflected in the parties' pleadings) *and* that the law is such that the movant is entitled to judgment as a matter of law." *Murphy*, 326 F.R.D. at 49 (emphasis in original) (citing *Tapp v. Washington Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016)). Since Rule 12(c) provides "judicial resolution at an early stage of a case," the movant "shoulders a heavy burden of justification." *Liberty Mar.*, 933 F.3d at 760; *see also Rockhill Ins. Co. v. Hoffman-Madison Waterfront, LLC*, No. 18-2104, 2019 WL 4860874, at *5 (D.D.C. Sept. 30, 2019).

In evaluating a motion under Rule 12(c), "the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Baumann*, 744 F. Supp. 2d at 222 (citing *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994)); *see also Tapp*, 306 F. Supp. 3d at 392. The Court may rely on "'the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.'" *Tapp*, 306 F. Supp. 3d at 392 (quoting *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010)). For the purpose of a 12(c) motion, the

10

Court may also rely on the decisions of the MSPB and Administrative Law Judge as "it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." *Baird v. Holway*, 539 F. Supp. 2d 79, 84 n.2 (D.D.C. 2008) (quoting *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996)); *see also Grant v. Dep't of Treasury*, 194 F. Supp. 3d 25, 28 n.2 (D.D.C. 2016) ("the Administrative Judge's Initial Decision, Treasury's Final Agency Decision, and MSPB's Final Order are official, public documents subject to judicial notice").

## IV.    DISCUSSION

### A. Exhaustion

Defendant contends that the Court must dismiss Plaintiff's discrimination and retaliation claims under both the Title VII and the Rehabilitation Act because, she failed to exhaust her administrative remedies before filing this action. Dkt. No. 41 at 1, 19–21; *see also* Dkt. No. 54 at 3, 5–7. Specifically, Defendant alleges that Plaintiff failed to initiate contact with an EEO Counselor at her agency within 45 days of any allegedly discriminatory conduct, as required by 29 C.F.R. § 1614.105(a)(1). First, Defendant claims that since exhaustion of administrative remedies constitutes a jurisdictional predicate to a Rehabilitation Act claim, the Court lacks subject matter jurisdiction over the claim. Dkt. No. 41 at 17–18 (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)). Second, Defendant claims that the Court must dismiss the remainder of Plaintiff's claims because "[she] failed to plead any facts demonstrating that she exhausted her EEO administrative remedies." Dkt. No. 41 at 19–21 (citing *Pickett v. Potter*, 571 F. Supp. 2d 66, 70 (D.D.C. 2008)). In essence, Defendant claims Plaintiff chose to pursue her claims through the negotiated grievance procedure, instead of the EEO complaint process, but that the negotiated

11

procedure is no substitute for the regulatory requirement of contacting an EEO Counselor.

Plaintiff counters that she has exhausted her administrative remedies. Dkt. No. 47 at 8–9. Her Second Amended Complaint states that she timely filed a grievance "pursuant to" Local 12's 2005 CBA alleging discrimination and/or retaliation in her removal. Dkt. No. 38 at ¶ 8. She then carried this process through arbitration and a final decision by the MSPB. *Id.*; *see also* Dkt. No. 47 at 8 ("Ms. Weng filed a grievance on her removal rather than an EEO complaint."). Thus, she claims, she chose an acceptable route that did not require her to contact the EEO Counselor and that route garnered a final decision thus exhausting her remedies.

As the question of whether Plaintiff has exhausted her administrative remedies answers both Defendant's jurisdictional challenge to the Rehabilitation Act claim and the nonjurisdictional challenge to the other claims, the Court addresses all of the exhaustion arguments at once. Whether under Rule 12(b)(1) or 12(c), the Court finds that Plaintiff has exhausted her administrative remedies and, therefore, has jurisdiction over her Rehabilitation Act claim and will deny Defendant's motion based on his exhaustion argument.

An employee covered by a negotiated grievance procedure "may raise the matter under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d); *see also* 29 C.F.R. § 1614.301(a); *Koch*, 934 F. Supp. 2d at 268. Further, that election occurs when a plaintiff "initiates an action under the applicable statutory procedure or timely files a grievance in writing . . . whichever event occurs first." 5 U.S.C. § 7121. Thus, by filing a grievance, an aggrieved employee elects the negotiated procedure and cannot go back to the statutory procedure, including contacting an EEO Counselor. It would, therefore, render CBAs futile if, by electing to proceed under the negotiated procedure, an aggrieved employee could never effectively exhaust their

12

administrative remedies.

Defendant's reliance on *Pickett* is unavailing. As Plaintiff points out, while Mr. Pickett did file a union grievance, there is no indication that he took that grievance through its final resolution. *Pickett*, 571 F. Supp. 2d at 70; Dkt. No 47 at 8. As the D.C. Circuit has established, an aggrieved employee who elects the negotiated procedure must take their claim to the MSPB before bringing suit in federal court. *Am. Fed'n of Gov't Employees, Local 2052 v. Reno*, 992 F.2d 331 (D.C. Cir. 1993). As the Circuit explained,

> We are left with the question of how the employee who chooses the negotiated grievance procedure obtains review in district court. The answer lies not in [5 U.S.C. § 7121] but in [5 U.S.C. § 7703], entitled "Judicial review of decisions of the Merit Systems Protection Board." 5 U.S.C. § 7703. Under section 7703 an employee with a discrimination claim may proceed to court after receiving notice of a "judicially reviewable action" under [5 U.S.C. § 7702]. 5 U.S.C. § 7703(b)(2). Because under subsection 7121(d) an employee who chooses the negotiated grievance procedure initially forfeits the statutory procedure, it would seem, at first glance, that the employee could not obtain notice of a judicially reviewable action under section 7702 and thus that section 7703 would be unavailable. But, as noted earlier, section 7121(d) provides a mechanism by which an employee who elects to use the negotiated grievance procedure may obtain judicial review under section 7702. The employee, as subsection (d) spells out, may seek MSPB review of the arbitrator's decision. Under section 7703, the MSPB's decision is then subject to judicial review because it is a "judicially reviewable action under [] 7702." 5 U.S.C. §§ 7703(a)(1), 7703(b)(2). Accordingly, in a mixed case an employee who chooses the negotiated grievance procedure must take the arbitrator's decision to the MSPB before seeking judicial review.

*Id.* at 334–35.

Thus, Plaintiff exhausted her administrative remedies by carrying her dispute through a final order by the MSPB, after which she was then entitled to bring action in this Court.

## B. *Res Judicata*

Defendant claims that he is entitled to judgment based on his observation that Plaintiff "appears to have copied verbatim the same factual events and claims that she raised, litigated, and

settled in her prior civil action." Dkt. No. 41 at 3. Under the doctrine of *res judicata*, Defendant seeks to dismiss either all of Plaintiff's claims, as based on the same nucleus of conduct, or "any such claim that was or could have been raised in the earlier action." *Id.* at 41 at 24 n.8; *see also id.* at 3, 21–26; Dkt. No. 54 at 9–10.

Plaintiff responds that she is not seeking double recovery, but instead using prior conduct as support for her current claims. *See* Dkt. No. 47 at 9–10. She claims she has included the past conduct on which the previous suit was based in her current Second Amended Complaint as "evidence to support her claim of constructive discharge." *Id.* at 11–12. As she does not base her current claims on this conduct, she argues, *res judicata* does not apply.

A ruling of *res judicata*, also termed claim preclusion, is warranted where "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103–04 (D.D.C. 2017). Thus, *res judicata* bars a subsequent suit where there has been "prior litigation (1) involving the same claims or cause of action, (2) between the same parties . . ., and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (quoting *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009)).

The prior suit Defendant points to is *Weng v. Solis*, 10-cv-2051 (D.D.C. closed Dec. 4, 2013) and the stipulation therein that ended the case. *See Weng*, 10-cv-2051, Dkt. No. 45. That case involved the same parties and a stipulated judgment on the merits by this Court. *See Estate*

14

of *Boyland v. United States Dep't of Agric.*, 913 F.3d 117, 126 (D.C. Cir. 2019).[7] Thus, the only question is whether the current suit involves the same claims or cause of action which the previous suit conclusively decided.

### 1. The Rehabilitation Act Claim

Plaintiff's Second Amended Complaint includes two allegations of violation of the Rehabilitation Act: the first in 2006, Dkt. No. 38 at ¶ 44, and the second in 2009, *id.* at 46–48. The 2006 incident was resolved by Plaintiff's previous case, as evident by its inclusion in Plaintiff's Amended Complaint in that case. *See Weng*, 10-cv-2051, Dkt. No. 16 at ¶¶ 44, 53. The 2009 incident also preceded the settlement and was resolved through a separate negotiated grievance procedure from the one at issue in this case, in which Plaintiff successfully litigated her claim before an arbitrator. *See* Dkt. No. 38 at ¶ 74; Dkt. No. 41 at 22 n.6; Dkt. 41-10. As such, both claims have been conclusively decided and Plaintiff is barred from recovering for them through *res judicata*. As Plaintiff includes no other allegations pursuant to the Rehabilitation Act in her Second Amended Complaint, the Court will grant Defendant's motion for judgment on the pleadings as it relates to Plaintiff's Rehabilitation Act claim.

### 2. Title VII Claims

It is readily apparent, however, that Plaintiff's remaining Title VII claims are not wholly barred by *res judicata* for the simple reason that the instrument Defendant turns to for preclusive

---

[7] *See also Tembec Inc. v. United States*, 570 F. Supp. 2d 137, 141 (D.D.C. 2008) (citing FED. R. CIV. P. 41) ("There was a final judgment on the merits in the 2005 suit—a stipulation of dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1) is a final adjudication on the merits that bars future suits based on the same cause of action.").

effect, the stipulation, specifically carves out those grievances.  As it states, "nothing in this Stipulation shall affect Plaintiff's ability to pursue any claims that she has currently pending that are the subject of any of the following:" and then lists "(iii) ARBL-L12-12-29, on appeal to the Merit Systems Protection Board as Request for Review, CB 7121-13-0180-V-1 (arbitrability of 3/9/2012 performance-based discharge)." *Weng*, 10-cv-2051, Dkt. No. 45 at 6.  Thus, at least some of Plaintiff's claims related to this action have not been conclusively decided.

The Court agrees, however, with Defendant that it is unclear from Plaintiff's Second Amended Complaint exactly which conduct is meant as "background" and which conduct she is using as the base of her current claims of discrimination and retaliation.  As Defendant points out, Plaintiff has not provided the Court with "any explanation about which of the 159 paragraphs in the Second Amended Complaint she deems background, nor does she identify which of the four discrimination claims these 'background' facts allegedly support."  Dkt. No. 54 at 9.  There remains, therefore, a dispute of fact between the parties as to which specific conduct she has recovered on, and which she has not, making judgment on the pleadings pursuant to *res judicata* premature.

## C. Plaintiff's Cross-Motion for Partial Judgment on the Pleadings

Plaintiff claims she is entitled to partial judgment because "the agency's effectuation of her performance-based discharge under Title 5, Chapter 43 of the Civil Service Reform Act of 1978 was so rife with harmful procedural errors and other violations of law that the removal decision [was] legally unsustainable."  Dkt. No. 47 at 2; *see also id.* at 4, 19–32.  In general, she argues that "defendant failed to provide [her] with due process under the Fifth Amendment and/or meet the other legal requirements for imposing performance-based discipline under Chapter 43."  *Id.* at 19.

16

Specifically, she claims that (1) her placement on a PIP was unwarranted because her supervisor failed to give her an opportunity to demonstrate "acceptable performance" in violation of Chapter 43's requirements, *id.* at 22 (citing 5 U.S.C. § 4302(b)(5)–(6) and 5 C.F.R. § 432.104); (2) the PIP standards themselves were invalid because her supervisors disregarded her feedback on the draft PIP issued to her and failed to give her "adequately clear notice of the requirements for acceptable performance," *id.* at 24; (3) she was denied a meaningful opportunity to demonstrate acceptable performance because her supervisors sought instead to "undermine [her] throughout her PIP," *id.*; and (4) the decision to remove her was baseless and established on predetermined grounds citing, for example, (a) the fact that the supervisor who issued her unfavorable performance reviews was also chosen as Deciding Officer for her proposed removal which "did not meet the requirements of due process," *see id.* at 28 (citing 5 U.S.C. § 4303(b)(1)(D)(ii) and 5 C.F.R. § 432.105(b)), and (b) that the Deciding Officer failed to consider the impact of her medical conditions, *id.* at 29–30 (citing 5 C.F.R. § 432.105(a)(4)(iv)). These procedural violations, according to Plaintiff, entitle her to partial judgment because the CSRA prohibits the upholding of an agency's decision "if the employee . . . (A) shows harmful error in the application of the agency's procedures in arriving at such decision; (B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or (C) shows that the decision was not in accordance with law." 5 U.S.C. § 7701(2); *see* Dkt. No. 47 at 4, 19.

Defendant claims Plaintiff is not entitled to partial judgment on this claim because the Court is limited in its review of the MSPB's decision to "determin[ing] whether it is sound and free of errors." Dkt. No. 54 at 2; *see also* Dkt. No. 41 at 3 ("[t]he law, at 5 U.S.C. § 7703(c), requires the Court to conduct a record review of the non-discrimination claims in a mixed case to

17

examine whether the MSPB's administrative decisions were free of error and supported by substantial evidence").   According to Defendant, Plaintiff's "challenge to the Chapter 43 performance-based removal procedures Defendant employed is irrelevant because her resignation from Federal employment prevented the removal from being effectuated" and the Court should defer to the MSPB's decision find as much. Dkt. No. 54 at 4.

The Court, however, will dismiss Plaintiff's motion for partial judgment without reaching the MSPB's decision.   The Court finds that Plaintiff's motion is premised on a cause of action she has not pled.   As previously stated, the Second Amended Complaint includes four counts: (I) Retaliation in violation of Title VII and the Rehabilitation Act, (II) Discrimination (Race) in violation of Title VII, (III) Discrimination (National Origin) in violation of Title VII, and (IV) Discrimination (Sex) in violation of Title VII. *See* Dkt. No. 38 at ¶¶ 163, 168, 173.   There is no mention at all in the Second Amended Complaint of Chapter 43, the CSRA, or a cause of action invoked thereof. *See generally id.*

While Plaintiff is appearing *pro* se, she is not in the position of the usual *pro se* litigant being an attorney and having worked on this case for over a decade.   Even non-attorney *pro se* litigants must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47(1957)); *see also Shipman v. Amtrak*, 19-04, 2019 WL 4889246, at *1 (D.D.C. Oct. 3, 2019).   Simply put, the Second Amended Complaint contains no trace of the cause of action for which Plaintiff now seeks partial judgment.   As such, the Court will deny Plaintiff's cross-motion.

**D.  Defendant's Motion for Judgment Based on MSPB Board's Decision**

Defendant moves for judgment contending that this Court should defer to the MSPB's

conclusion that Plaintiff voluntarily resigned and therefore the case must be dismissed. *See* Dkt. No. 41 at 3–4, 26–29. Defendant asserts this Court is limited to conducting a "record review" of the MSPB's decision. Dkt. No. 41 at 3 (citing 5 U.S.C. § 7703(c)). Review of the record, Defendant claims, reveals that the MSPB's decision was "soundly supported by factual evidence and free of error." *Id.* According to Defendant, the MSPB found that Plaintiff "failed to assert non-frivolous allegations that her resignation was involuntary due to Agency misinformation, duress, or coercion" and that this holding should stand. *Id.*; *see also* Dkt. No. 54 at 4, 10–16.

Plaintiff responds that, in addition to her allegations that she was dismissed for discriminatory and retaliatory reasons and that the process of reaching that decision was improper, she was also constructively discharged. *See* Dkt. No. 47 at 1, 3, 14–19. In other words, she claims she did not so much resign, as was forced to quit. She bases this coercion on (1) "discrimination claims in this and prior litigation;" (2) "'[a]ggravating factors'" such as "'historic discrimination to which plaintiff had been subjected, her repeated but futile attempts to obtain relief from that discrimination, and the predictable humiliation and loss of prestige'" (quoting *Clark v. Marsh*, 665 F.2d 1168 , 1175 (D.C. Cir. 1981)); (3) the "profound humiliation" associated with being a "graduate of prestigious academic institutions" yet being subjected to "mistreatment and [] unjustified adverse actions;" and (4) the allegation that her termination was "baseless" and that DOL management needlessly rejected a union proffered settlement to transfer her to a new job within DOL, rather than be removed. Dkt. No. 47 at 17–18.

*1. Standard of Review*

Defendant advances an incorrect standard of review for his claim. While the Court applies an APA-like deferential review to *nondiscrimination* claims in the mixed case context, the Court

19

applies *de novo* review to *discrimination* claims. *See* 5 U.S.C. § 7703(c) ("in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial *de novo* by the reviewing court"); *see also supra* at 5. Plaintiff's Second Amended Complaint makes clear she is advancing only discrimination and retaliation claims under Title VII and the Rehabilitation Act. *See* Dkt. No. 38 at ¶¶ 163, 168, 173. It is also clear that the MSPB did not consider these claims. *See* Dkt. No. 41-7 at 9–10 ("[b]ecause the appellant has not established [MSPB] jurisdiction over her alleged adverse action, the [MSPB] cannot review her discrimination and reprisal claims"). Thus, the Court will review Plaintiff's Title VII claims *de novo*.

   2.  *De Novo Review*

        Reviewing the matter *de novo*, the Court concludes that numerous facts are left in dispute precluding judgment on the pleadings. Namely, there remains the central question of whether Plaintiff was terminated for discriminatory and retaliatory reasons. Plaintiff claims she was effective at her job despite management's harassment and her termination was based on discriminatory motives and in retaliation for protected EEO activity. *See, e.g.*, Dkt. No. 38 at ¶¶ 38, 41, 135, 140, 161, 166, 171; Dkt. No. 47 at 12–14; Dkt. No. 59 at 6–9. Defendant counters that she was terminated for legitimate reasons. *See, e.g.*, Dkt. No. 41 at 2; Dkt. No. 54 at 14–16. This conflict regarding the propriety of Plaintiff's termination is exactly the type of factual dispute that precludes judgment on the pleadings.

        While the issue of her resignation was important for the MSPB to determine its jurisdiction, that is not the question before this Court. Instead, the Court's concern is focused on the circumstances of her termination, and whether the decision to terminate her employment was

colored by discriminatory or retaliatory motives. Given the dispute of fact surrounding Plaintiff's termination, Defendant's motion will be denied.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendant's motion for judgment on the pleadings or, alternatively, for summary judgment, Dkt. No. 41, is GRANTED as to Plaintiff's claim under the Rehabilitation Act;

2. Defendant's motion for judgment on the pleadings or, alternatively, for summary judgment, Dkt. No. 41, is DENIED as to Plaintiff's claims under Title VII of the Civil Rights Act of 1964; and

3. Plaintiff's motion for partial judgment on the pleadings or, alternatively, for summary judgment, Dkt. No. 48, is DENIED.

DATED this 31st day of October, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

21