IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KARIN WENG, | ) ) ) ) | CASE NO. 1:15-cv-00504-BJR |
| *Plaintiff*, | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD |
| v. | ) ) | AMENDED COMLAINT AND GRANTING DEFENDANT'S MOTION |
| EUGENE SCALIA, Secretary, U.S. Department of Labor, | ) ) ) | FOR SUMMARY JUDGMENT |
| *Defendant.* | ) ) ) |  |

## I.    INTRODUCTION

Before the Court is Defendant Eugene Scalia's Motion for Summary Judgment, submitted in his capacity as Secretary of the U.S. Department of Labor ("DOL").[1]  Dkt. No. 72.  The Court previously issued an order granting in part and denying in part a motion by Defendant for judgment on the pleadings and denying Plaintiff's cross-motion for partial judgment on the pleadings.  Dkt. No. 60.  Defendant now seeks summary judgment on Plaintiff's claims that survived the previous Order.  Along with her response to the motion, Plaintiff submitted a Motion for Leave to File a Third Amended Complaint.  Dkt. No. 78; *see also* Dkt. No. 78-1 (proposed Third Amended Complaint).  Having reviewed the motions, the oppositions thereto, the record of the case, and the

---

[1] This action has gone through several name changes as the leadership at DOL has changed.  *See, e.g.*, Dkt. No. 1 (original Complaint naming Thomas E. Perez, Secretary of Labor, as defendant); Dkt. No. 60 at 2 n.1.

1

relevant legal authorities, the Court will deny the Motion for Leave to File Third Amended Complaint and grant the Motion for Summary Judgment.  The reasoning for the Court's decision follows.

## II.   BACKGROUND

### A.  Factual Background

Plaintiff is female and of Asian ancestry having been born in Taiwan.  Dkt. No. 72-1 at ¶ 1 (Defendant's Statement of Undisputed Material Facts); *see also* Dkt. No. 60 at 6–9 (Court's previous Order providing facts of the case).  Throughout the course of this matter, she has appeared before the Court *pro se*.  She is a graduate of Yale College and Georgetown University Law School.  Dkt. No. 72-1 at ¶ 2.  From 1995 to March of 2012, she was employed by DOL's Employee Benefits Security Administration in the Office of Exemption Determinations as an Employee Benefits Law Specialist.  *Id.*

The dispute at the heart of this matter addresses Plaintiff's dismissal from the DOL.  Even before the process that lead to her termination, however, Plaintiff claims she was subject to harassment and discrimination based on her race, gender, and national origin.  *See* Dkt. No. 38 at ¶¶ 34–37, 148, 152–53, 156–58 (Second Amended Complaint).  She also claims she was subject to retaliation based on her involvement as a witness for two female coworkers when they filed Equal Employment Opportunity ("EEO") complaints.  *Id.* at ¶¶ 40–41.  This harassment and retaliation, Plaintiff claims, caused great stress leading to a diagnosis of post-traumatic stress disorder, depression, and anxiety, for which Plaintiff also alleges DOL failed to accommodate.  *Id.* at ¶¶ 43–44, 46–47.

Based on these hardships, Plaintiff initiated numerous dispute resolution procedures,

including through both an EEO statutory procedure and a negotiated procedure established by the collective bargaining agreement between her union, the American Federation of Government Employees, Local No. 12, AFL-CIO, and DOL.  Dkt. No. 72-1 at ¶ 5.  As the Court explained in its previous Order, federal employees who feel they have been subject to discrimination can address their accusations in either a statutory procedure initiated by filing an EEO complaint with their agency or by filing a grievance through a negotiated union procedure.[2]  *See* Dkt. No. 60 at 2–3.  Plaintiff, for example, filed at least seven EEO complaints based on working conditions primarily between February 2006 and April 2009.  Based on these complaints, Plaintiff filed suit in this Court.  *See Weng v. Solis*, 10-cv-2051 (D.D.C. closed Dec. 4, 2013).  The parties settled the suit in November 2013.  *See id.* at Dkt. No. 45 (Stipulation of Settlement and Dismissal).  This earlier case is separate from the case at hand, the distinction being important as Defendant claims that many of the acts Plaintiff here complains were resolved by the previous settlement.

While litigating her previous EEO complaints and prior to the settlement, Plaintiff claims the harassment at her workplace continued.  *See* Dkt. No. 38 at ¶ 45.  At this time, Eric Raps was her first-line supervisor and Lyssa Hall was her second-line supervisor.  Dkt. No. 72-1 at ¶ 4.  On April 15, 2011, Mr. Raps conducted Plaintiff's mid-year review for Fiscal Year 2011.  *Id.* at ¶ 9.  During this meeting, Mr. Raps informed Plaintiff that her performance was at an unacceptable level for four critical elements of her position.  *Id.*[3]

---

[2] The Court refers to disputes brought through the DOL's statutory EEO procedure as "complaints" and those brought through the negotiated union procedure as "grievances."  *See* Dkt. No. 60 at 3 n.3.

[3] Based on this meeting, Plaintiff filed an informal EEO complaint, which was decided in DOL's favor and Plaintiff chose not to pursue the claim further.  Dkt. No. 38 at ¶ 10; *see also* Dkt. No. 76-2 at ¶ 10.

1

2

3

Based on this negative review, DOL placed Plaintiff on a Performance Improvement Plan ("PIP"). Dkt. No. 72 at 4. Plaintiff was given an opportunity to provide comments on a draft PIP before it was finalized. *See id.* at 5; Dkt. No. 72-1 at ¶ 11. On July 15, 2011, Mr. Raps issued a formal PIP and accompanying memorandum. Dkt. No. 72-1 at ¶ 12; *see also* Dkt. No. 72-2 (Performance Improvement Plan Memorandum). The PIP was to be effective for 90 days, or from July 18, 2011 to October 17, 2011, but was extended through October 31, 2011. Dkt. No. 72-1 at ¶ 12. Plaintiff filed grievances challenging both the propriety of the PIP and its extension but the parties agree that these grievances are not part of the present suit, although Plaintiff claims she may refer to them as "background in support" of her current claims. *Id.* at ¶ 16; Dkt. No. 76-2 at ¶ 16.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

According to her supervisors, Plaintiff failed to sufficiently improve during the PIP timeframe. On January 6, 2012, Mr. Raps issued a Notice of Proposed Removal, which documented the areas in which Mr. Raps felt Plaintiff failed to demonstrate an acceptable level of job performance. Dkt. No. 72-1 at ¶ 18; Dkt. No. 72-3 (Proposal to Remove for Unacceptable Performance Memorandum). The Notice also provided Plaintiff an opportunity to respond to its conclusions, which she did both orally and in writing. Dkt. No. 72-1 at ¶¶ 36–38; Dkt. No. 72-6 (Oral and Written Reply of Karin Weng, February 10, 2012). As part of her replies, Plaintiff claimed that her previously diagnosed stress-related medical conditions qualified her for disability retirement and that she was entitled to submit medical documentation of the condition. Dkt. No. 72-1 at ¶¶ 39–40; Dkt. No. 72-6 at 18–19; *id.* at 55. She claims that DOL did not consider the former and did not provide her an opportunity to submit the latter. Dkt. No. 38 at ¶¶ 135, 138.

25

On March 7, 2012, Ms. Hall issued a Decision on Proposed Removal, affirming Mr. Raps'

4

proposal to remove Plaintiff.  Dkt. No. 72-1 at ¶¶ 41, 50; Dkt. No. 72-7 (Decision on Proposed

Removal).  The Decision stated that Plaintiff's removal would be effective March 9, 2012.  Dkt.

No. 72-7 at 5.  On March 9, Plaintiff sent an email purporting to resign in lieu of removal.  Dkt.

No. 72-1 at ¶ 51; Dkt. No. 72-9 (Resignation in Lieu of Removal Email).  Defendant has long

claimed this email negated Plaintiff's termination, but this Court has already established that

Plaintiff was effectively terminated prior to the sending of this email.  *See* Dkt. No. 60 at 20–21.[4]

On March 13, 2012, Plaintiff submitted a grievance based on her termination and the events

leading up to it.  Dkt. No. 72-1 at ¶ 51; Dkt. No. 72-11 (Grievance).  The matter proceeded to

arbitration, with the arbiter ruling that he did not have jurisdiction over the dispute because, in

essence, Plaintiff had quit and not been terminated based on her March 9 email.  Dkt. No. 38 at ¶

8.  Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB"), which was

docketed as No. CB 7121-13-0180-V-1.  *Id.*

As mentioned *supra*, Plaintiff at this time was in the course of litigating her former

complaints against the DOL in the previous case before this Court.  In November of 2013, the

parties came to a settlement in that case, which carved out Plaintiff's appeal to the MSPB pursuant

to her Grievance.  Dkt. No. 72-1 at ¶¶ 57–58; *Weng*, 10-cv-2051, Dkt. No. 45 at 6 (Stipulation of

---

[4] Sections of Plaintiff's response to summary judgment appear to advance an independent claim for "constructive discharge."  *See, e.g.*, Dkt. No. 76 at 14–15 ("Because Ms. Weng received a Final Order from the MSPB denying her coerced resignation/constructive discharge claim, she has exhausted her administrative remedies for that claim"). Constructive discharge, however, is not an independent basis for liability under Title VII.  *See Hammel v. Marsh USA Inc.*, 79 F. Supp. 3d 234, 245 (D.D.C. 2015).  Rather, constructive discharge is a doctrine within discrimination and retribution claims that "enables an employee to overcome the presumption of voluntariness and demonstrate she suffered an adverse employment action by showing [a] resignation . . . was, in fact, not voluntary."  *Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010).  In other words, there is no need for Plaintiff to allege a constructive discharge as the Court has already held she was effectively terminated.

Settlement and Dismissal stating that "nothing in this Stipulation shall affect Plaintiff's ability to pursue any claims that she has currently pending that are the subject of any of the following:" and then lists "(iii) ARBL-L12-12-29, on appeal to the [MSPB] as Request for Review, CB 7121-13-0180-v-1 (arbitrability of 3/9/2012 performance-based discharge)"). On August 28, 2014, the MSPB administrative judge issued a recommendation that the MSPB dismiss Plaintiff's appeal for lack of jurisdiction based on voluntary resignation. Dkt. No. 72-12 (MSPB Initial Decision). On March 12, 2015, the MSPB adopted this decision in a final order. Dkt. No. 72-12 (MSPB Final Order).

## B. Procedural History

On April 7, 2015, Plaintiff filed the present lawsuit. Dkt. No. 1. Her Second Amended Complaint advances four causes of action: Count I for Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. § 749(a) ("Rehabilitation Act"), and Counts II, III, and IV for discrimination based on race, national origin, and sex, respectively, in violation of Title VII. Dkt. No. 38 at ¶¶ 163, 168, 173. In April of 2019, Defendant moved for summary judgment or, alternatively, for judgment on the pleadings to dismiss all of the claims in the Second Amended Complaint. Dkt. No. 41. Plaintiff responded and included a cross-motion for partial judgment on the pleadings or, alternatively, summary judgment. Dkt. No. 47.

On October 31, 2019, the Court issued an order granting in part and denying in part Defendant's motion and denying Plaintiff's cross-motion. Dkt. No. 60. Several elements of this order are worth recapping as relevant to the current motion. First, the Court determined that it was appropriate to analyze the motion under Federal Rule of Civil Procedure ("FRCP") 12(c),

judgment on the pleadings, leaving room for the current motion under FRCP 56 for summary

judgment. *Id.* at 9.  Second, the Court ruled that Plaintiff had exhausted her administrative

remedies by bringing her Grievance through to a final order by the MSPB. *Id.* at 11–13.  Defendant

had argued that Plaintiff failed to exhaust her administrative remedies because she did not contact

an EEO Counselor within 45 days of any allegedly discriminatory conduct, as required by the

statutory process under 29 C.F.R. § 1614.105(a)(1).  The Court, however, found that she had

effectively opted for an alternative path, the negotiated union procedure, which she exhausted.

Third, the Court dismissed Plaintiff's Rehabilitation Act claim based on *res judicata*. *Id.*
at 15.  At the same time, the Court denied Defendant's request for dismissal of Plaintiff's Title VII

claims pursuant to *res judicata* because it was evident that the Settlement Agreement in Plaintiff's

previous case carved out Plaintiff's termination-related Grievance. *Id.* at 15–16.  While the Court

noted that it was not clear based on Plaintiff's Second Amended Complaint which conduct she

based her claims on in the current suit, and what she considered "background," the Court stated

that it was equally clear that at least some claims survived pursuant to the carve-out.  Thus, a

question remained over the scope of Plaintiff surviving claims. *Id.* at 16.

Finally, the Court dismissed Plaintiff's cross-motion for partial judgment on the pleadings.
*Id.* at 16–18.  In her motion, Plaintiff argued that DOL's termination process was "so rife with

harmful procedural errors" that it violated her rights under the Civil Service Reform Act of 1978

("CSRA"). *Id.* at 16 (quoting Dkt. No. 47 at 2).  The Court, however, found that Plaintiff had

failed to plead a cause of action under the CSRA and that, instead, her Second Amended Complaint

was limited to her enumerated discrimination and retaliation causes of action. *Id.* at 18.

Based on the foregoing, Plaintiff's claims survived, but their scope was left open for further

argument.  Defendant then filed the currently pending Motion for Summary Judgment on May 15, 2020.  Dkt. No. 72.  In it, Defendant seeks dismissal on three grounds: a repeat of his argument on *res judicata*, a revived failure to exhaust argument, and, alternatively, that Defendant has provided an irrefutable legitimate, nondiscriminatory reason for Plaintiff's removal.  Since the Court is persuaded that Defendant's *res judicata* argument is correct, the Court need not reach the other two grounds.

### III.    MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Along with her response to Defendant's Motion for Summary Judgment, Plaintiff submitted, nominally under FRCP 15, a motion for leave to file a third amended complaint.  Dkt. No. 78; Dkt. No. 78-1 (proposed Third Amended Complaint); *see also* FED R. CIV. P 15(a)(2) (in this posture, "a party may amend its pleading only with . . . the court's leave.  The court should freely give leave when justice so requires).  She claims the changes to her complaint are intended to clarify her causes of action, focus her claims on her termination rather than other alleged past harms, and to "address[] some of the *res judicata* and exhaustion issues raised in Defendant's Motion for Summary Judgment."  Dkt. No. 78 at 1.  She has also made some other minor revisions, such as naming the current Secretary of Labor and correcting typographical errors.  *Id.* at 1, 1 n.1.

Defendant opposes leave to amend.  Dkt. No. 80.  He argues that Plaintiff must actually meet the "good cause" standard of FRCP 16 as the time for amending pleadings has passed.  *Id.* at 5–6, 8–9; *see also* FED. R. CIV. P 16(b)(4) ("[a] schedule may be modified only for good cause and with the judge's consent").  According to Defendant, Plaintiff is unable to do so because the request is untimely—only two months before trial—and amending is improper as merely an effort to evade summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Both parties are correct that when this case recommenced after remand from the D.C. Circuit, the Court did not set a deadline for amending pleadings.  The Court, however, has reviewed the proposed Third Amended Complaint, as well as a comparison against the Second Amended Complaint, and concludes that it is not sufficiently different from the Second Amended Complaint to warrant leave to file in the case's current posture, whether under FRCP 15 or 16.

It is "well-established" in this District that a plaintiff may not amend their complaint in opposition to a defendant's Motion for Summary Judgment.  *See Petrucelli v. Dep't of Justice*, No. 18-cv-0729, 2020 WL 1323136, at \*5 (D.D.C. Mar. 20, 2020) (quoting *Jo v. District of Columbia*, 582 F. Supp. 2d 51, 64 (D.D.C. 2008)).  The reasoning behind this rule is based on efficiency grounds.  Other courts in this District have explained that plaintiffs should not be allowed to "keep [] case[s] alive indefinitely by shifting [their] legal theories at the last minute.  *See, e.g.*, *Price v. Unite Here Local 25*, 883 F. Supp. 2d 146, 154 (D.D.C. 2012); *see also Equity Group, Ltd. v. Painewebber, Inc.,* 839 F. Supp. 930, 932 (D.D.C. 1993) ("[t]he Court finds that the amended complaint is merely a tactic designed to evade summary judgment, and that to allow amendment at this time would protract the litigation and thus prejudice defendant").

While here Plaintiff is not adding new claims nor shifting legal theories, the changes she has proposed are of such little consequence that it is not worth risking requiring rebriefing of the Motion on Summary Judgment to accommodate them.  Both parties now recognize that Plaintiff's current claims are based on her termination, and not previous conduct for which she already recovered pursuant to her settlement.  The Third Amended Complaint adds no new causes of action, legal theories, or factual material relevant to the current motion.  Therefore, efficiency dictates the denial of leave to file an amended complaint that changes so little in the face of a fully

9

1  briefed Motion for Summary Judgment.

2  ## IV.   MOTION FOR SUMMARY JUDGMENT

3  ### A.  Legal Standard

4  FRCP 56 dictates that district courts "shall grant summary judgment if the movant shows

5  that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6  matter of law." FED. R. CIV. P. 56(a). A "genuine dispute" exists where "the evidence is such that

7  a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it might

8  "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

9  U.S. 242, 248 (1986); *see also Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991–92 (D.C. Cir.

10  2002).

11  In reviewing a motion for summary judgment, the Court "view[s] the evidence in the light

12  most favorable to the nonmovant[]" and "draw[s] all reasonable inferences" in the nonmovant's

13  favor. *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C.

14  Cir. 2016). The movant bears the initial burden of demonstrating that there are no genuine disputes

15  of material fact. *Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017). For issues on which

16  the nonmovant will carry the ultimate burden of proof, as is the case here, the movant can meet

17  their initial burden by producing evidence negating an essential element of the nonmovant's claim

18  or showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex

19  Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant meets this burden, the nonmovant must

20  in return "identify specific facts in the record to demonstrate the existence of a genuine issue" in

21  order to defeat the motion. *Montgomery*, 875 F.3d at 713.

22

23

24

25

### B. Discussion

The parties contest the extent to which Plaintiff may in this case rely on allegedly discriminatory and retaliatory acts invoked in her previous case.  Plaintiff has consistently claimed that she may refer to these prior examples as "background," or evidence, from which a jury could infer discriminatory and retaliatory animus in her termination.  *See, e.g.*, Dkt. No. 76 at 12. Defendant, on the other hand, contends that inserting questions of discrimination and retaliation into Plaintiff's termination Grievance constitutes impermissible relitigation of settled claims.  *See, e.g.*, Dkt. No. 82 at 5–8.  According to Defendant, the Court's previous Order did not determine the scope of Plaintiff's Grievance.  This scope, Defendant argues, cannot include her Title VII claims because Plaintiff had already settled those claims.  Defendant is correct.

To determine the scope of Plaintiff's remaining claims the Court looks not only to what the Grievance raised but what the Settlement Agreement preserved.  As the Court's previous Order stated, Plaintiff's current claims were not "wholly barred by *res judicata* for the simple reason that the instrument Defendant turn[ed] to for preclusive effect, the [Settlement Agreement], specifically carve[d] out" Plaintiff's Grievance.  Dkt. No. 60 at 15–16.  At the same time, the Court concluded that a question remained as to the scope of what survived the settlement.  While the Court declined to answer this question in the context of a motion to dismiss on the pleadings, the Court now turns to the terms of the Settlement Agreement to determine what survived.  *Weng*, 10-cv-2051, Dkt. No. 45.

Settlement agreements are "in the nature of contracts," *Makins v. District of Columbia*, 277 F.3d 544, 546 (D.C. Cir. 2002), and, under District of Columbia law, are enforced no different than any other valid and binding contract, *see Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 188

11

(D.C. 2009) (citing *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C. 2009)).[5]

Since Settlement agreements are "construed under general principles of contract law,'" *JSC Transmashholding v. Miller*, 264 F. Supp. 3d 201, 204 (D.D.C. 2017) (quoting *Dyer*, 983 A.2d at 354); *see also Vill. of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C. Cir. 1982), "[w]hen interpreting a settlement agreement, 'a court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the settlement agreement,'" *JSC Transmashholding*, 264 F. Supp. 3d at 204 (quoting *The Cuneo Law Grp., P.C. v. Joseph*, 669 F.Supp.2d 99, 107 (D.D.C. 2009)); *see also District of Columbia v. D.C. Pub. Serv. Comm'n*, 963 A.2d 1144, 1155 (D.C. 2009) (internal quotations and citations omitted) (courts in the District of Columbia apply the "objective law of contracts, which requires [them], in the first instance, to rely solely upon the contract language when factally [sic] unambiguous as providing the best objective manifestation of the parties' intent").

The situation currently before the Court is strikingly similar to that of *Moore v. United States Department of State*, in which that court provided ample authority for the proposition that "Courts have repeatedly held that a valid settlement agreement bars a plaintiff from asserting facts covered by the agreement in a subsequent hostile environment action." 351 F. Supp. 3d 76, 88 (D.D.C. 2019) (listing cases). As in this case, the plaintiff in that discrimination case sought to rely on events prior to a settlement agreement to support post-settlement claims. That court conducted a standard textual analysis and concluded that the agreement's "language clearly

---

[5] Plaintiff has made no contention that the Settlement Agreement is either invalid or that Defendant breached the agreement.

forecloses a hostile work environment claim premised on events before November 26, 2013, when the agreement was executed." *Id.*

Here, the terms of the Settlement Agreement go one step further and settle any discrimination and retaliation claims that Plaintiff would proffer as background for the Grievance. As it states, the Settlement provides for the "full and complete satisfaction of all claims which have been or could have been asserted by plaintiff in the above captioned civil action, and all claims relating to her employment with the Department of Labor." *Weng*, 10-cv-2051, Dkt. No. 45 at 5. It further provides that Plaintiff agrees not to "assert any claim or institute or prosecute any civil action" against DOL "with respect to any event complained of . . . or with respect to any claim involving her employment with [DOL] unless they are among the subjects specifically described below and made part of the listed matters." *Id.*  As the Court noted early, the Settlement Agreement goes on to carve out the Grievance that, at that time, was pending before the MSPB.  However, the Agreement explicitly states that

> Plaintiff hereby fully and forever releases and discharges [DOL] from any and all rights and claims of every kind, nature, and description, whether presently known or unknown, which [P]laintiff now has or may have arising out of or in connection with any event occurring on or before the date that this Settlement Agreement becomes effective and enforceable, including without limitation any rights or claims under . . . Title VII of the Civil Rights Act of 1964.

> *Id.* at 5–6.

Thus, even to the extent the Settlement Agreement carved out the Grievance, its broad terms settled any claims within the Grievance related to discrimination and retaliation under Title VII.  Settlement agreements are equivalent to a decision on the merits for the purpose of *res judicata* and bar relitigation of claims resolved by their terms. *See Chandler v. Bernanke*, 531 F. Supp. 2d 193, 197 (D.D.C. 2008) ("The doctrine of *res judicata* precludes a party from relitigating

…

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

a claim on which final judgment was previously reached.  An agreement between the parties

dismissing all claims is the equivalent of a decision on the merits and thus claims settled by

agreement are barred by *res judicata*."); *See also Estate of Boyland v. United States Dep't of Agric.*,

913 F.3d 117, 126 (D.C. Cir. 2019); *Parker v. United States Dep't of Agric.*, 404 F. Supp. 3d 31,

43–44 (D.D.C. 2019).

Based on the terms of the Settlement Agreement, all that remained of the Grievance's

claims post-settlement was a complaint of wrongful termination.  The Court, however, has already

dismissed such a claim in this case because Plaintiff failed to adequately plead it in her Second

Amended Complaint. Dkt. No. 60 at 16–18.[6]  Accordingly, since Plaintiff may not here relitigate

her settled Title VII claims, she has no surviving causes of action.

Permitting Plaintiff to file her proposed Third Amended Complaint would not prevent this

outcome.  While the Court has already provided its reasoning for denying Plaintiff's Motion for

Leave to File Third Amended Complaint, *see supra* at 8–10, the Court reiterates that the filing of

the Third Amended Complaint would not alter its conclusion that Plaintiff has failed to advance a

live cause of action.  As stated earlier, the Third Amended Complaint does not add any new

allegations or causes of action.  Instead, it merely narrows Plaintiff's claims to make clear that she

is seeking to recover for a termination based on discriminatory and retaliatory animus; a claim the

---

[6] Additionally, to the extent that Plaintiff's response to the Motion for Summary Judgement can be read to assert a
violation of her Fifth Amendment right to due process, the Court finds that she has neither properly alleged such a
claim, nor exhausted her administrative remedies for such a claim.  *See* Dkt. No. 76 at 5 ("Ms. Weng maintains that
defendant placed her on a Performance Improvement Plan ("PIP") without cause and committed numerous other
violations of law in her removal process, including denial of her Fifth Amendment right to due process").  Neither
Plaintiff's Second Amended Complaint nor her Grievance mentions the Fifth Amendment.  *See generally* Dkt. Nos.
38, 72-11.

14

Court here finds she has already settled.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion for Leave to File Third Amended Complaint, Dkt. No. 78, and GRANTS Defendant's Motion for Summary Judgment, Dkt. No. 72.


DATED this 8th day of July, 2020.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE