UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARIN WENG,<br><br>**Plaintiff,**<br><br>v.<br><br>THOMAS E. PEREZ,<br>*Former U.S. Secretary of Labor*,<br><br>**Defendant.** | No. 15-cv-504-ZMF |

## MEMORANDUM OPINION

On March 9, 2012, the U.S. Department of Labor ("DOL" or "Defendant") terminated Plaintiff Karin Weng ("Ms. Weng" or "Plaintiff") for deficient performance. After an administrative proceeding before the Merit Systems Protection Board ("MSPB"), Ms. Weng sued the DOL[1] for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging discrimination on the basis of race, national origin, and sex, as well as retaliation for protected Equal Employment Opportunity ("EEO") activity.

Pending before the Court are Plaintiff's Motion for Ruling on Outstanding Issues in Defendant's Motion for Summary Judgment, ECF No. 93, and Defendant's Motion for Summary Judgment, ECF No. 72, which require the resolution of two issues: (1) whether Plaintiff exhausted the administrative remedies for her Title VII claims and (2) whether "[D]efendant had a legitimate, non-discriminatory reason for [her] removal." For the reasons stated herein, the Court DENIES AS MOOT Plaintiff's Motion and GRANTS Defendant judgment as a matter of law.

---

[1] When Plaintiff filed this suit, Thomas E. Perez served as the Secretary of Labor. Now, Acting Secretary of Labor Julie Su is the proper defendant in this case. *See* 42 U.S.C. § 2000e-16(c).

1

## I. BACKGROUND

### A. Factual Background

#### 1. *Alleged Discrimination, EEO Activity, and First Litigation*

Ms. Weng is a Taiwanese–American woman who, from 1995 to 2012, worked for DOL's Employee Benefits Security Administration as an Employee Benefits Law Specialist, GS-13,[2] in the Office of Exemption Determinations ("OED"). *See Weng v. Walsh*, 30 F.4th 1132, 1133–34 (D.C. Cir. 2022); Compl. ¶ 3, ECF No. 1. Plaintiff alleges that, throughout her employment, members of DOL management subjected her to "offensive racial, ethnic, and/or sexually charged slurs, comments, and jokes[.]" *Id.* at 1134. Yet, Ms. Weng "never received a negative performance evaluation, nor any formal counseling or discipline, from 1995 to 2005." *Id.* (cleaned up).

In 2004, Eric Raps (a white man) became Ms. Weng's first-line supervisor, while Lyssa Hall (a Black woman) served as Ms. Weng's second-line supervisor. *See* Order Den. Pl.'s Mot. Leave to File Third Am. Compl. & Granting Def.'s Mot. Summ. J. ("2020 Summ. J. Order") 3, ECF No. 83; Second Am. Compl. ¶¶ 16–17, ECF No. 38. In the three years following Mr. Raps' transfer, three female employees—including Ms. Weng—filed EEO complaints against him alleging discrimination and retaliation. *See* Second Am. Compl. ¶ 19. Ms. Weng also served as a witness in her colleagues' employment discrimination proceedings, after which, she alleges, "the harassment against her escalated[.]" *See Weng*, 30 F.4th at 1134. Specifically, Ms. Weng alleges that DOL management subjected her to "unjustified criticism of her work product, unreasonable operating procedures, false charges of misconduct, and false accusations of failing to make sufficient progress[.]" Second Am. Compl. ¶ 41. In 2006, Ms. Weng began filing EEO complaints

---

[2] The DOL largely pays employees on the General Schedule ("GS") pay scale, which has fifteen levels. *See* Salary Table 2023-GS, OPM.GOV, https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/salary-tables/pdf/2023/GS.pdf.

regarding her working conditions. *See Weng*, 30 F.4th at 1134. "This harassment and retaliation, Plaintiff claims, caused great stress leading to a diagnosis of post-traumatic stress disorder, depression, and anxiety, for which Plaintiff also alleges DOL failed to accommodate." 2020 Summ. J. Order at 2.

Between February 2006 and April 2009, Ms. Weng filed seven EEO complaints regarding her workplace treatment. *See* Order Granting Part & Den. Part Def.'s Mot. J. Pleadings & Den. Pl.'s Cross-Mot. Partial J. Pleadings ("2019 Order") 6–7, ECF No. 60. These complaints formed the basis of her first federal case, *Weng v. Solis* (*Weng I*), 960 F. Supp. 2d 239 (D.D.C. 2013). There, Ms. Weng pointed to Mr. Raps' and Ms. Hall's conduct to allege discrimination on the bases of race, national origin, and sex, as well as retaliation. *See id.* That suit was settled in 2013. *See* Stipulation Settlement & Dismissal 1, *Weng I*, No. 10-cv-2051 (D.D.C. Nov. 28, 2013), ECF No. 45.

2. *Deterioration of Performance, Performance Improvement Plan, and Termination*

Ms. Weng alleges that, while *Weng I* was pending, her treatment at work worsened. *See* 2019 Order at 7. She claims that her supervisor subjected her to "micromanag[ement]," "heightened scrutiny," and "unjustifiabl[e] critici[sm]." *Id.* Ms. Weng continued to file complaints regarding the purportedly harassing conduct: in 2011, she filed sixteen such complaints against Mr. Raps. *See* Second Am. Compl. ¶ 78. Around this time, Ms. Weng's performance reviews deteriorated. On April 15, 2011, Mr. Raps conducted Ms. Weng's mid-year review for FY 2011 and informed her that "her performance was at an unacceptable level for four critical elements of her position." 2020 Summ. J. Order at 3.

On July 15, 2011, Mr. Raps placed Ms. Weng on a Performance Improvement Plan ("PIP"), set to run from July 18 to October 17, 2011. *See* Def.'s Mot. Summ. J., Ex. 1, Mem. Re:

Performance Improvement Plan ("PIP Mem.") 1, ECF No. 72-2. The PIP described Ms. Weng's "Unsatisfactory" performance in four critical elements of her role, and stated that her performance "must be at a 'Minimally Satisfactory' (Need to improve) level to maintain [her] current position," and that "a rating of 'Unsatisfactory' (Fail to meet) in one or more of the critical elements at the conclusion of the PIP may result in reassignment, reduction-in-grade or removal[.]" *Id.*

"According to her supervisors, Plaintiff failed to sufficiently improve during the PIP timeframe." 2020 Summ. J. Order at 4. On January 6, 2012, Mr. Raps issued a Notice of Proposed Removal, which outlined Ms. Weng's "unacceptable performance pertaining to four of the [five] elements" by which she was evaluated. Def.'s Mot. Summ. J., Ex. 2, Mem. Re: Proposal to Remove for Unacceptable Performance ("Notice of Proposed Removal") 2, ECF No. 72-3. According to Defendant, Ms. Weng failed to improve her performance despite weekly meetings with Mr. Raps during which he provided "continuous feedback." *Id.* at 3. On March 7, 2012, Ms. Hall approved Mr. Raps' proposed removal. *See* Def.'s Mot. Summ. J., Ex. 6, Mem. Re: Decision on Proposed Removal ("Decision on Proposed Removal") 2, ECF No. 72-7. Ms. Hall's decision was "based on [Ms. Weng's] inability to perform at the minimum level of performance in one or more of the critical elements" of her role. *Id.* On March 9, 2012, Ms. Weng resigned on the advice of union counsel but did not waive her appeal rights. *See* Def.'s Mot. Summ. J., Ex. 8, Email Re: Resignation 2, ECF No. 72-9.

    B.    <u>Procedural History</u>

On March 13, 2012, Ms. Weng invoked the negotiated procedure set forth by her union's collective bargaining agreement and filed a grievance regarding her termination. *See* 2019 Order at 8; Def.'s Mot. Summ. J., Ex. 9, Agreement Between Local 12, AFGE, AFL-CIO and U.S. Dep't of Labor 3–4, ECF No. 72-10. On March 4, 2013, an arbitrator ruled that he did not have

4

jurisdiction because Ms. Weng had resigned voluntarily, rather than being fired. *See* 2019 Order at 8; Second Am. Compl. ¶ 8. Ms. Weng appealed to the MSPB. *See* 2019 Order at 8. On August 28, 2014, an administrative judge dismissed her grievance for the same reason. *See* Def.'s Mot. Summ. J. or Alternatively, Mot. J. on Pleadings, Ex 2, MSPB Decision 1, ECF No. 41-2. On April 7, 2015, Ms. Weng filed the instant action, alleging Title VII claims of discrimination and retaliation. *See* Compl.

On May 15, 2020, Defendant moved for summary judgment. *See* Def.'s Mot. Summ. J. On July 8, 2020, Judge Rothstein granted Defendant's motion, holding that Ms. Weng's settlement agreement from *Weng I* barred her termination claims. *See Weng v. Scalia*, No. 15-cv-504, 2020 WL 3832950, at *7 (D.D.C. July 8, 2020). On August 24, 2020, Ms. Weng appealed to the U.S. Court of Appeals for the D.C. Circuit. *See* Notice of Appeal, ECF No. 85. On April 8, 2022, the D.C. Circuit ruled that Ms. Weng's settlement agreement did not bar her Title VII claims. *See Weng*, 30 F.4th at 1137–38. The D.C. Circuit remanded to this Court to consider whether Ms. Weng's grievance "preserved the [Title VII] claims [that Plaintiff] advances in this litigation." *Id.* at 1133. On June 2, 2022, the parties consented to proceed before a magistrate judge for all purposes. *See* Notice, Consent, & Reference of Civil Action to Magistrate Judge, ECF No. 92.

Ms. Weng is currently appearing *pro se*. *See* Letter Re: Weng v. Secretary of Labor, Civil Action No. 15-504, ECF No. 98. However, she has at times had the assistance of counsel. The union's contract attorney Charles B. Taylor represented Ms. Weng during the initial administrative proceedings. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") 8, ECF No. 76. Mr. Taylor "had substantial input into her removal grievance," the specificity of which is central to Ms. Weng's exhaustion arguments. *Id.* And Ms. Weng is by no means an unsophisticated plaintiff,

holding degrees from Yale College and the Georgetown University Law Center and previously working in a law-adjacent role as an Employee Benefits Law Specialist. *See* Pl.'s Opp'n at 2, 3.

## II.  LEGAL STANDARD

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute . . . is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

In evaluating motions for summary judgment, the Court must review all evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor. *See Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam). In doing so, the Court must not assess credibility or weigh the evidence. *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). However, the nonmoving party "may not merely point to unsupported self-serving allegations, but [rather] must substantiate his allegations with sufficient probative evidence[.]" *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Bass v. SBC Commc'ns, Inc.*, 418 F.3d 870, 872–73 (8th Cir. 2005)). A genuine issue for trial must be supported by affidavits, declarations, or other competent evidence. *See* Fed. R. Civ. P. 56(c). If the

nonmoving party's evidence "is merely colorable or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (cleaned up).

Because Ms. Weng is proceeding *pro se*, her pleadings should "be liberally construed, and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). But the calculus changes where a plaintiff is "a sophisticated *pro se* litigant[.]" *Garlington v. D.C. Water & Sewer Auth.*, 303 F.R.D. 417, 419 (D.D.C. 2014) (dismissing *pro se* plaintiff's case for failure to follow court order, as plaintiff was "an attorney . . . having practiced law for several years"); *see also Jeffers v. New York*, No. 14-cv-5659, 2014 WL 6675676, at *1 (E.D.N.Y. Nov. 25, 2014) (holding a *pro se* plaintiff's experience and sophistication is "one factor that courts have considered in evaluating the conduct of a party"). Regardless, the "procedural rules in ordinary civil litigation should [not] be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Courts "should [provide *pro se* parties] with fair notice of the requirements of the summary judgment rule" before entering summary judgment. *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968) (per curiam). On March 9, 2023, this Court issued an Order advising Plaintiff on the summary judgment standards and the consequences of "failure to respond appropriately to Defendant's Motion[.]" Order, ECF 101. On March 17, 2023, Ms. Weng filed a response to this order. *See* Pl.'s Suppl. Briefing in Opp'n Def's Mot. Summ. J., ECF No. 102. Ms. Weng's response "supplement[ed] her briefing on the issue of pretext" by submitting a revised declaration addressing Defendant's statement of undisputed material facts. *Id.* at 2. Defendant did not file a response, having previously indicated that all issues "could be adequately decided on the previously-submitted briefing[.]" Def.'s Resp. to Pl.'s Mot. for Order, ECF No. 97.

## III.   DISCUSSION

### A.   Whether Plaintiff Exhausted her Administrative Remedies

#### 1.   *Legal Standard for Exhaustion*

"Government employees alleging discrimination in violation of Title VII . . . must exhaust [their] administrative remedies before bringing their claims to federal court." *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012). To satisfy this requirement, a Title VII lawsuit must be "limited in scope to claims that are like or reasonably related to the allegations" in the initial grievance. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up). "At a minimum, the Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the [prior] charge," *id.* (cleaned up), such that "the allegations that were specifically put before the agency" are "factually similar" to the new allegations, *Mount v. Johnson*, 36 F. Supp. 3d 74, 85–86 (D.D.C. 2014).

#### 2.   *Title VII Discrimination Claims*

Ms. Weng failed to articulate "factually similar" allegations of discrimination in her initial grievance and her subsequent Title VII complaint. *Id.* at 86. Her grievance makes no factual reference to discrimination on the basis of race, national origin, or sex. *See* Def.'s Mot. Summ. J., Ex. 10, Dep't of Labor/AFGE Local 12 Grievance Form ("Grievance") 2–5, ECF No. 72-11. Rather, the "[u]nderlying facts of [Plaintiff's] grievance" focus on the deterioration in her performance evaluations and treatment, which she attributes to her testimony at a colleague's EEO proceeding. *See id.* at 2. The grievance lacks any reference to specific discriminatory conduct to underly her broad assertion that "she was subjected to harassment, disparate treatment, reprisal, and retribution," and that her "supervisors engaged in a sustained and carefully orchestrated campaign of intimidation, harassment, and disparate treatment." *Id.* "Because [Plaintiff's] charge

8

contained no claims or factual allegations that could reasonably be expected upon investigation to lead to a [discrimination] claim, . . . she failed to exhaust her administrative remedies for such a claim[.]" *Park*, 71 F.3d at 909; *see* Grievance at 2.

The reference to discrimination in Ms. Weng's grievance was "background information" that "the fact-finder may consider[.]" *Uzlyan v. Solis*, 706 F. Supp. 2d 44, 54 (D.D.C. 2010); *see* Grievance at 4. However, "[e]ven though [Plaintiff] uses the word 'discriminatory,' the substance of the [grievance] does not allege any discrimination on the basis of race, color, [sex], or national origin." *Hunter v. District of Columbia*, 905 F. Supp. 2d 364, 379 (D.D.C. 2012), *aff'd*, No. 13-cv-7003, 2013 WL 5610262, at *1 (D.C. Cir. Sept. 27, 2013); *see* Grievance at 6. Without this, her subsequent Title VII claim was not sufficiently "factually similar" to the grievance. *Mount*, 36 F. Supp. 3d at 86. "Allowing [Ms. Weng's] complaint to encompass allegations outside the ambit of the predicate [grievance]" by expanding the charged conduct to discrimination "would circumvent the [MSPB's] investigatory . . . role[ and] deprive [Defendant] of notice of the charge[.]" *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (cleaned up).

Ms. Weng separately contends that her grievance sufficiently articulated her Title VII claims by explicitly invoking the Civil Rights Act of 1964, as well as 5 U.S.C. § 2302, which incorporates references to Title VII. *See* Pl.'s Opp'n at 9–10; Grievance at 1. However, a mere reference to anti-discrimination statutes "in the absence of an explanation of whether [the conduct] constitutes discrimination in violation of [those statutes]" is "insufficient" to support a claim. *Gibbs v. Wash. Metro. Area Transit Auth.*, 48 F. Supp. 3d 110, 133 n.8 (D.D.C. 2014) (holding use of the word "bias" in description of supervisor insufficient to substantiate Title VII claim).

Ms. Weng's *pro se* status does not excuse her failure to exhaust her administrative remedies. *See Park*, 71 F.3d at 907. The administrative exhaustion requirement "should not be

construed to place a heavy technical burden on individuals [such as *pro se* litigants] untrained in negotiating procedural labyrinths[.]" *Id.* (cleaned up). However, the absence of any discussion of discrimination in Plaintiff's grievance was neither a technical misstep nor a mere "vaguely worded charge[.]" *Caldwell v. ServiceMaster Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). Ms. Weng's Title VII discrimination claims cannot be so "liberal[ly] interpret[ed]" as "to bypass the Title VII administrative process." *Park*, 71 F.3d at 907. Moreover, Ms. Weng was not appearing *pro se* when she drafted her initial grievance. Her union's contract attorney "represented [her] at the administrative level" and "had substantial input into her removal grievance." Pl.'s Opp'n at 8. Furthermore, Ms. Weng "is a sophisticated *pro se* litigant [with a law degree], well-versed in litigation and the rules of this [C]ourt; indeed, she has prosecuted [multiple] cases before this [C]ourt." *Akers v. Liberty Mut. Grp.*, 847 F. Supp. 2d 21, 27 (D.D.C. 2012); *see Weng I*, 960 F. Supp. 2d at 239; Second Am. Compl. ¶ 10.

       3.    *Title VII Retaliation Claim*

Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "The role of the antiretaliation provision is to prevent 'employer interference with unfettered access to Title VII's remedial mechanisms.'" *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

Ms. Weng's "allegations . . . before the agency" are "factually similar" to the Title VII retaliation claim in her complaint. *Mount*, 36 F. Supp. 3d at 85–86; *see* Grievance at 2; Second Am. Compl. ¶ 2. Ms. Weng's grievance alleges that DOL management "subjected [her] to

harassment, disparate treatment, reprisal, and retribution for [testifying in a proceeding that concluded] Mr. Raps had committed an unfair labor practice." Grievance at 2. DOL management evaluated Ms. Weng as "highly effective" in 2005. *See id.* But roughly forty-five days after her testimony at the 2006 proceeding, Ms. Weng learned that "she was allegedly failing to perform at an acceptable level of competence." *Id.* Because her complaint properly drew upon the allegations of the predicate grievance, Ms. Weng gave Defendant sufficient notice of the retaliation charge. *See Marshall*, 130 F.3d at 1098. Thus, Ms. Weng exhausted the administrative remedies for her retaliation claim. *See id.*

### B. Whether Plaintiff's Termination Constituted Retaliation in Violation of Title VII

#### 1. *Legal Standard for Retaliation*

If a plaintiff cannot provide direct evidence of retaliation, the Court will assess the claims under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the employee must make out a prima facie case of retaliation by showing that she (1) "engaged in statutorily protected activity," (2) "suffered a materially adverse action by [the] employer," and (3) that "a causal link connects the two." *Iyoha v. Architect of Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019). Next, the burden shifts to the employer to articulate a legitimate, non-retaliatory justification for its action. *See McGrath v. Clinton*, 666 F.3d 1337, 1383 (D.C. Cir. 2012). If the employer makes this showing, then "the burden-shifting framework disappears." *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The "central inquiry" becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and the employer intentionally [retaliated] against the plaintiff on a prohibited basis." *Iyoha*, 927 F.3d at 566 (quoting *Adeyemi v. District of*

11

*Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)). In other words, the employee must demonstrate "pretext." *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).

### 2. *Defendant's Legitimate and Non-Retaliatory Justification*

When the employer properly presents a legitimate, non-retaliatory reason for the challenged action, the district court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Because Defendant asserted legitimate, non-retaliatory reasons for the challenged actions—as described below—the *Brady* shortcut applies. *See Barry v. Haaland*, No. 19-cv-3380, 2022 WL 4598518, at *6 (D.D.C. Sept. 29, 2022), *appeal filed*, No. 19-cv-3380 (D.D.C. Oct. 7, 2022), ECF No. 62; Notice of Proposed Removal at 6–8, 12–14, 17–20. Thus, the Court will proceed to the second step.

Four factors are "paramount in the analysis" of whether an employer has met its burden to articulate a legitimate, non-retaliatory justification for its action: (1) the employer must produce admissible evidence; (2) "the factfinder, if it believe[s] the evidence, must reasonably be able to find that the employer's action was motivated by a [nonretaliatory] reason;" (3) the employer's justification must be "facially credible in light of the proffered evidence;" and (4) the employer must provide a "clear and reasonably specific explanation" for its action. *Figueroa v. Pompeo*, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019) (cleaned up).

First, Defendant has "made an adequate evidentiary proffer . . . that the Court may consider at summary judgment," detailing Ms. Weng's unsatisfactory performance in several critical elements of her role. *Arnoldi v. Bd. of Trs.*, 557 F. Supp. 3d 105, 115 (D.D.C. 2021) (cleaned up). Defendant's evidentiary proffer included: Ms. Weng's PIP and the accompanying memorandum describing the evaluations that called for it; Ms. Weng's proposed and finalized removal, which

12

describe her shortcomings during her PIP; and rebuttals to Ms. Weng's proposed comparators.[3] This all is admissible evidence. *See id.* (holding "deposition testimony, supporting emails, and [employer] records" sufficient).

Second, "[a] factfinder reviewing [the documentation around Ms. Weng's PIP and subsequent removal] could believe the evidence and reasonably conclude that [Defendant] was motivated by the nondiscriminatory reasons described in its [memoranda]." *Clinton v. Granholm*, No. 18-cv-991, 2021 WL 1166737, at *8 (D.D.C. Mar. 26, 2021) (citing notice of and decision on proposed removal). During her mid-year review for FY 2011, Ms. Weng's "performance was at an unacceptable level . . . in four critical elements" of her position. Notice of Proposed Removal at 1. This led to her placement on a PIP. *See* PIP Mem. at 1. The PIP detailed Ms. Weng's "Unsatisfactory" performance in these critical elements and required that her performance rise to "a 'Minimally Satisfactory' (Need to improve) level to maintain [her] current position." *Id.* The PIP also warned that "Unsatisfactory" ratings "in one or more of the critical elements at the conclusion of the PIP may result in reassignment, reduction-in-grade or removal." *Id.* Nevertheless, Ms. Weng's performance on her PIP, as Defendant tells it, reflected her "incomplete, haphazard preparation and background work[,] as well as the failure to follow [] work expectations[.]" Notice of Proposed Removal at 6. The Notice of Proposed Removal details how Ms. Weng failed to submit follow-up questions promptly, sought information that she already

---

[3] *See, e.g.*, Def.'s Mot. Summ. J. at 27–28 (identifying and countering potential comparators); Def.'s Statement of Undisputed Facts 4–7, ECF No. 72-1 (summarizing Plaintiff's analysis and communications deficiencies on specific assignments); PIP Mem. at 1–2 (discussing Plaintiff's failure in critical elements of job, including communication, technical guidance, and customer service); Notice of Proposed Removal at 6–8, 12–14, 17–20 (overviewing performance failures on specific assignments that led to unsatisfactory performance on PIP); Decision on Proposed Removal at 2–5 (noting Plaintiff's alleged submission of incomplete work product, failure to identify salient issues, and requests for information she already possessed).

possessed, and was unable "to correctly analyze the relevance" of certain facts. *Id.* at 7; *see id.* 6–8. The Notice of Proposed Removal also details how Ms. Weng generally deviated from the instructions of the PIP. *See id.* at 6–8. "Time and again, courts have held that failure to follow supervisory instructions is a legitimate reason for adverse employment action, including termination." *Arnoldi*, 557 F. Supp. 3d at 115.

Third, "the substantial evidence of [Ms. Weng's] substandard performance during [her] tenure" and her PIP "render[] [Defendant's] nondiscriminatory explanation for [terminating her] facially credible." *Williams v. Smithsonian Inst.*, No. 14-cv-1900, 2019 WL 3859155, at *8 (D.D.C. Aug. 16, 2019). Ms. Weng's first- and second-line supervisors (Mr. Raps and Ms. Hall) both approved her PIP based on "Unsatisfactory" performances in several critical elements. *See* PIP Mem. at 1. And both supervisors signed off on Ms. Weng's removal given her failure on the PIP—during which she exercised subpar communication abilities and failed to sufficiently analyze substantive issues in case materials, among other shortcomings, according to Defendant. *See* Notice of Proposed Removal at 6–8, 12–14, 17–20; Decision on Proposed Removal at 2–5. The catalog of specific performance issues, along with the supervisors' consensus regarding Ms. Weng's termination, indicate that "Defendant's explanation is therefore legitimate." *Albert v. Perdue*, No. 17-cv-1572, 2019 WL 4575526, at *4 (D.D.C. Sept. 20, 2019) (citing *Figueroa*, 923 F.3d at 1088) (holding the defendants' nondiscriminatory explanation "facially credible" when employer hired top-ranked candidates and the plaintiff ranked in bottom half).

Fourth, Defendant's "explanations were sufficiently clear and specific to allow [Ms. Weng] ample opportunity to bring forward evidence to 'disprove . . . [D]efendant's reasons.'" *Clinton*, 2021 WL 1166737, at *9 (quoting *Figueroa*, 923 F.3d at 1088). Defendant detailed Ms. Weng's shortcomings in critical elements of her job, particularly during her PIP, in Defendant's

14

memoranda regarding her performance and removal. *See* PIP Mem.; Notice of Proposed Removal; Decision on Proposed Removal. These statements "gave [Ms. Weng] a clear opportunity to challenge the asserted justification as merely a pretext for unlawful [retaliation.]" *Williams*, 2019 WL 3859155, at *8.

        3.    *Plaintiff's Evidence of Pretext*

"The burden now shifts to [Ms. Weng] to provide sufficient evidence by which a reasonable jury could find [Defendant's] stated reason was pretext for . . . retaliation." *Albert*, 2019 WL 4575526, at *5 (citing *Brady*, 520 F.3d at 494). To establish pretext, plaintiffs typically provide evidence of "variant treatment of similarly situated employees, discriminatory statements by decision makers, [or] irregularities in the stated reasons for the adverse employment decision." *Bennett v. Solis*, 729 F. Supp. 2d 54, 60 (D.D.C. 2010). Alternatively, they may show that the employer provided "a phony reason" for its action. *Hogan v. Hayden*, 406 F. Supp. 3d 32, 46 (D.D.C. 2019) (quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994)). However, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible." *Hogan*, 406 F. Supp. 3d at 46 (quoting *Pignato*, 14 F.3d at 349).

        a.    Veracity of Reason for Termination

Ms. Weng is unable to establish pretext by showing that her performance deficiencies were "false." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Indeed, Ms. Weng's allegation that her managers "failed to tie their criticisms of [her] to her performance standards and/or explain how she failed each of [the requisite job elements]" does not hold water. Pl.'s Opp'n at 27. DOL management detailed in a metric-by-metric assessment Ms. Weng's shortcomings in "critical elements" of her role and provided specific incidents undergirding these evaluations. *See* Decision on Proposed Removal at 2–5. For example, Defendant indicated that during the PIP, Ms. Weng

15

> sent questions to [her supervisor] either at the time of deadlines or after deadlines passed, failed to analyze information and address substantive issues contained in case materials, blamed another employee for [her] failure to perform substantive analysis on case materials, . . . failed to prepare adequately for a meeting, . . . failed to address numerous topics identified by [her supervisor] in a revised draft of questions to an applicant, produced poor work product, did not follow up with [her supervisor] about drafts, input [her supervisor's] edits without adding explanation or context, and exercised poor judgment during a teleconference with that applicant's counsel.

Def.'s Mot. Summ. J. at 6.

Ms. Weng's circumstantial evidence also fails to establish Defendant's justification as false. First, Ms. Weng points to the temporal proximity between her protected EEO activity and the deterioration in her performance evaluations as determinative. *See* Pl.'s Opp'n at 24. For example, Ms. Weng alleges that "[w]ithin a week of learning of [Plaintiff's] first suit" her supervisor "falsely accus[ed] her of missing a work deadline." *Id.* However,

> [m]ere temporal proximity is not sufficient to support [a finding of retaliation], because otherwise protected activities would effectively grant employees a period of immunity, during which no act, however egregious, would support summary judgment for the employer in a subsequent retaliation claim. As a result, positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanation[] [for Plaintiff's termination is] genuine.

*Iyoha*, 927 F.3d at 574 (cleaned up).

Second, Ms. Weng alleges that her supervisor "cited Ms. Weng for bringing up her EEO case in work meetings, . . . thereby directly revealing [his] animus towards her based on her EEO activities." Pl.'s Opp'n at 25. But "merely noting that an employee has engaged in protected activity does not, without more, raise an inference of retaliation." *Iyoha*, 927 F.3d at 561; *see* Pl.'s Opp'n at 23.

     b.  Comparator Analysis

Ms. Weng also cannot establish pretext by showing that the DOL "treated other employees of a different [group] . . . more favorably in the same factual circumstances." *Burley v. Nat'l*

16

*Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Brady*, 520 F.3d at 495) (rejecting comparator because they had different roles and responsibilities than plaintiff). Ms. Weng identifies eight comparators: six working under Ms. Weng's supervisor, Ms. Hall, and two working under then-OED director Mr. Ivan Strasfeld. *See* Pl.'s Opp'n, Ex. C, Summary Chart of Comparators ("Comparator Chart"), ECF No. 76-5. Comparators are "not similarly situated" when they "performed at a higher level than [the plaintiff.]" *Chambers v. Fla. Dep't of Transp.*, 620 F. App'x 872, 879 (11th Cir. 2015). Ms. Weng received the lowest rating—"Unsatisfactory"—of the six comparators working for Ms. Weng's supervisor. *See* Comparator Chart. Additionally, not sharing a common supervisor is a "factor[] that bear[s] on whether someone is an appropriate comparator[.]" *Burley*, 801 F.3d at 301. Thus, the two employees who worked for Mr. Strasfeld are not valid comparators, nor are any of the eight comparators persuasive. *See id.*

Ms. Weng notes that "of the nine GS-13 Employee Benefits Law Specialists in OED during FY 2011, [she] ranked fourth in the number of cases closed," but nonetheless "received the lowest rating" of the eight comparators. Pl.'s Opp'n at 26. However, three of the comparators under Ms. Weng's supervisor closed more cases than Ms. Weng, and two others closed six cases, comparable to Ms. Weng's eight. *See* Comparator Chart. Moreover, the complexity of the case each specialist handled was the metric by which DOL management measured employees, not the number of cases closed. *See* Def.'s Reply in Supp. of Mot. Summ. J. 11, ECF No. 82. Thus, case complexity—and not case closure rate—is a "[f]actor[] that bear[s] on whether someone is an appropriate comparator." *Burley*, 901 F.3d at 301.

Furthermore, Ms. Weng cannot prove that she is "similarly situated" to any of the comparators because none of them "were charged with offenses of comparable seriousness."

17

*Burley*, 801 F.3d at 301. Ms. Weng does not identify any comparators who were enrolled in a PIP. *See* Def.'s Mot. Summ. J. at 28. Ms. Weng specifically highlights one comparator (Employee #2, a Black woman) who was not fired despite evaluations that dropped from Highly Effective/Effective to Minimally Satisfactory and a low rate of closing cases. *See* Pl.'s Opp'n at 26 n.24. Yet, Ms. Weng does not indicate that Employee #2 "had been placed on a PIP [or] required the same level of assistance" in performing her responsibilities. *Chambers*, 620 F. App'x at 879 (rejecting comparators because "none had a history of poor work performance").

Ms. Weng retorts that her placement on a PIP was itself retaliatory and unwarranted. *See* Pl.'s Opp'n at 25. However, the PIP was rooted in and cited to her deficient performance on several projects. *See supra*. Additionally, Mr. Raps and Ms. Hall separately approved her PIP. *See* PIP at 2, 5. The independent agreement of two supervisors on Ms. Weng's performance deficiencies further mitigates the possibility of pretext in her treatment. *See Chambers,* 620 F. App'x at 878–879 (holding one supervisor's "poor evaluation" of an employee "does not suggest pretext" given a previous supervisor's similar evaluation); *Borges-Silva v. Nishida*, No. 21-cv-474, 2023 WL 183669, at *7 (D.D.C. Jan. 13, 2023) (giving more credence to performance concerns because one supervisor "independently vetted [other supervisor's] recommendation" on termination), *appeal filed*, No. 23-cv-5030, 2023 WL 183669 (D.C. Cir. Feb. 13, 2023).

Because Ms. Weng "fail[ed] to produce evidence that the proposed comparators were actually similarly situated to [her], an inference of falsity [or retaliation] is not reasonable, and summary judgment is appropriate." *Walker v. McCarthy*, 170 F. Supp. 3d 94, 108 (D.D.C. 2016) (cleaned up).

## IV. CONCLUSION

Summary judgment is appropriate. *See Clinton*, 2021 WL 1166737, at *9–11. Thus, the Court will DENY AS MOOT Plaintiff's Motion and will GRANT Defendant's Motion for Summary Judgment in an accompanying order. As such, judgment is entered as a matter of law in favor of Defendant.

Date: March 28, 2023

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE